## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

---

**DAVEAIR, LLC**                                **CIVIL CASE NO. 24-1336**

**VERSUS**                                      **JUDGE EDWARDS**

**CITY OF MONROE, ET AL**                       **MAGISTRATE JUDGE MCCLUSKY**

---

### MEMORANDUM RULING AND ORDER

Before this court are four motions to dismiss. The City of Monroe ("Monroe") and Friday Ellis, in his Official Capacity as Mayor of Monroe, Louisiana ("Mayor Ellis") filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) & (6) (R. Doc. 20). Avflight Monroe Corporation ("Avflight") filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) (R. Doc. 24). DaveAir, LLC ("DaveAir") opposed both motions to dismiss (R. Doc. 29). Monroe, Ellis, and Avflight (collectively, "Original Defendants") replied to DaveAir's opposition (R. Docs. 32, 33).

Plaintiff then filed its Amended Complaint (R. Doc. 38) whereby Plaintiff did not name Ellis as a defendant but added Avfuel Corporation ("Avfuel") as a defendant. Subsequently, Monroe filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) & (6) (R. Doc. 54). Avflight and Avfuel (together referred to as "the Private Defendants") also filed a subsequent Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) (R. Doc. 52). DaveAir opposes both motions to dismiss (R. Doc. 56). Monroe, Avflight, and Avfuel (all collectively, "Defendants") replied to DaveAir's opposition (R. Docs. 59, 60).

After careful consideration of the parties' memoranda and the applicable law, Defendants' Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**.

## I.    <u>BACKGROUND</u>[1]

David McGee ("McGee"), the owner of DaveAir, founded the company as an aerial application company.[2] He transitioned the business into a flight school in 2018 and purchased Hangar 7 to operate the school at the Monroe Regional Airport ("MLU").[3] Avflight was—and still is—the only Fixed Based Operator ("FBO") and commercial fuel vendor at MLU, and Avfuel is the sole fuel provider for Avflight.[4] McGee approached MLU about obtaining an FBO permit to open and operate a "fuel farm" to fuel aircraft at MLU, but he was told that MLU could only have one FBO and that DaveAir could not sell fuel at MLU.[5]

Ron Phillips ("Phillips"), the airport director at MLU at the time, informed DaveAir that MLU had "Minimum Standards," written in 2014 (the "2014 Minimum Standards"), which an operator must satisfy to obtain FBO status and that DaveAir did not meet them.[6] The 2014 Minimum Standards required an FBO selling aircraft fuel to: maintain at least 20,000 gallons of aviation gasoline and 75,000 gallons of jet

---

[1] The factual background below comes "from the operative [...] complaint because, at this stage, we accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff...." *Nevarez v. Dorris*, 135 F.4th 269, 271 n.1 (5th Cir. 2025) (citation modified).

[2] *See* R. Doc. 38, ¶ 9.

[3] *See* R. Doc. 38, ¶¶ 9–10.

[4] *See* R. Doc. 38, ¶¶ 11–12. As an FBO, Avflight operates at MLU to provide aeronautical services, such as fueling, hangaring, aircraft maintenance, and other similar services to carriers. *See* R. Doc. 24-1 at 6.

[5] *See* R. Doc. 38, ¶¶ 15–16.

[6] *See* R. Doc. 38, ¶ 21.

fuel storage; maintain at least two metered and filter-equipped fuel dispensers; and lease at least four acres of land at MLU.[7] DaveAir claims that Phillips tipped off Avflight about DaveAir's plans to open a fuel farm because the next morning, Avflight significantly increased its price of fuel to DaveAir.[8]

In September 2019, DaveAir filed a complaint with the FAA ("2019 Part 13 Complaint"), alleging that Monroe was blocking DaveAir's efforts to become an FBO; that the 2014 Minimum Standards created unfair and unreasonable barriers to competition; and that Monroe and MLU had established the exclusive right for Avflight to operate as the sole FBO, all in violation of MLU's FAA Grant Assurances.[9] Less than two weeks after DaveAir filed the 2019 Part 13 Complaint, Monroe agreed to give DaveAir a fuel permit.[10] The Monroe City Council adopted Resolution No. 7570, which authorized the fuel permit to DaveAir, but only to sell and store gasoline or other fuel for service *to its own planes*.[11]

DaveAir claims that the Private Defendants surveilled DaveAir and reported to the City Attorney's Office that DaveAir was fueling planes other than its own.[12] Avflight contacted the operators to which DaveAir was providing fuel to, telling them that DaveAir did not have a permit to sell them fuel.[13] Avflight further asked operators at MLU to sign exclusive fuel seller agreements to only buy fuel from

---

[7] *See* R. Doc. 38, ¶¶ 22–23.
[8] *See* R. Doc. 38, ¶¶ 24–25.
[9] *See* R. Doc. 38, ¶ 27.
[10] *See* R. Doc. 38, ¶ 29.
[11] *See* R. Doc. 38, ¶ 30.
[12] *See* R. Doc. 38, ¶ 32.
[13] *See* R. Doc. 38, ¶ 38.

Avflight.[14] DaveAir claims that while the Private Defendants were doing this, Avflight did not—and still does not—have an active fuel permit.[15] In April 2020, the City Attorney's Office ordered DaveAir to cease and desist from violating its permit by fueling third parties' planes, and Monroe subsequently let DaveAir's fueling permit expire on October 8, 2020.[16]

In an effort to meet the acreage requirements from the 2014 Minimum Standards, DaveAir entered into a lease with Monroe for 2.94 acres of undeveloped land, which Monroe then permanently blocked the tract to prevent any aircraft access.[17] The FAA instructed Monroe not to charge DaveAir rent while access was blocked, but Monroe terminated the lease for DaveAir's purported failure to pay.[18] Then, with Monroe's permission, DaveAir subleased a 0.96 acre tract of land from Corks, LLC, which held a lease for land at MLU that included a fuel farm and Hangar 12.[19] The Monroe City Council accepted DaveAir's proposal for a restated lease for Hangar 7 to expand the Hangar, which DaveAir owned, in a further effort to meet the acreage requirements and become an FBO.[20] Monroe used these leases to support its argument to the FAA that it had not violated its Grant Assurances, but as DaveAir would later find out, the leases were unsuitable for DaveAir's aeronautical purpose of operating as a fuel-selling FBO.[21]

---

[14] *See* R. Doc. 38, ¶ 34.
[15] *See* R. Doc. 38, ¶ 37.
[16] *See* R. Doc. 38, ¶¶ 36, 39.
[17] *See* R. Doc. 38, ¶ 40.
[18] *See* R. Doc. 38, ¶ 40.
[19] *See* R. Doc. 38, ¶ 41.
[20] *See* R. Doc. 38, ¶ 42.
[21] *See* R. Doc. 38, ¶ 43.

After DaveAir filed the 2019 Part 13 Complaint, the FAA launched an investigation into the 2014 Minimum standards; during the investigation, the FAA looked into Avflight's lease at MLU.[22] The FAA found that Avflight's lease was heavily discounted, did not require Avflight to make any capital improvements to vacant land, and Monroe agreed to allow other fuel sellers at MLU only if (i) those sellers complied with the 2014 Minimum Standards and (ii) the terms of the other sellers' contracts with Monroe were less favorable than Avflight's terms.[23] The FAA told Monroe that this language "appears to create an exclusive right or a[t] a minimum, limits competition."[24] The FAA finished its investigation, concluding that Monroe violated Grant Assurance 22 because the 2014 Minimum Standards were "unjustly discriminatory, unfair, and unreasonable" for commercial service operators desiring to become an FBO authorized to sell fuel.[25] Further, Monroe admitted to the FAA that no entity—including Avflight—met the requirement that an FBO have a ground lease of at least four acres.[26] In May 2020, the FAA ordered Monroe to amend the 2014 Minimum standards, specifically to address the ground lease, fuel storage capacity, FBO building size, and aircraft storage facility size requirements.[27] Monroe did not approve the amended Minimum Standards for nearly two years, during which Monroe did not issue any new leases.[28]

---

[22] *See* R. Doc. 38, ¶ 45.
[23] *See* R. Doc. 38, ¶¶ 47–48.
[24] *See* R. Doc. 38, ¶¶ 47–48.
[25] *See* R. Doc. 38, ¶ 50.
[26] *See* R. Doc. 38, ¶ 53.
[27] *See* R. Doc. 38, ¶ 56.
[28] *See* R. Doc. 38, ¶ 58.

During the amendment process, Avflight "pressured" Monroe.[29] According to DaveAir, Avflight told the City Attorney's Office that DaveAir's operations were "dangerous," "unsafe," "illicit," and "illegal," and pushed Monroe to apply the 2014 Minimum Standards to DaveAir.[30] Avflight repeatedly reminded Monroe that its lease required that no leases would be granted with terms more favorable than those contained in Avflight's agreement.[31] Avflight demanded that Monroe terminate DaveAir's lease and fuel permit or order DaveAir to cease operations, or else Avflight would sue Monroe for breach of its lease.[32] Because of the delays and DaveAir's inability to bid on new contracts, DaveAir's sublease with Corks, LLC for 0.96 acres that included a fuel farm and Hangar 12 was not economically viable, causing DaveAir to default.[33] Monroe also informed DaveAir that it could not fulfill a bid to a commercial airline because its permit restricted commercial sales of fuel.[34] Meanwhile, Monroe allowed Avflight to win the bid even though Avflight did not have a valid fuel permit when it applied for or won the bid.[35]

Monroe told the FAA that it would not move forward with any lease negotiations until the new minimum standards were adopted; however, this only applied to DaveAir because Monroe and Avflight negotiated a "land swap" by which Avflight would relinquish certain land to be leased to "Pilots for Patients."[36]

---

[29] *See* R. Doc. 38, ¶ 59.
[30] *See* R. Doc. 38, ¶ 61.
[31] *See* R. Doc. 38, ¶ 63.
[32] *See* R. Doc. 38, ¶ 63.
[33] *See* R. Doc. 38, ¶ 71.
[34] *See* R. Doc. 38, ¶ 69.
[35] *See* R. Doc. 38, ¶ 69.
[36] *See* R. Doc. 38, ¶¶ 82–87.

According to DaveAir, Avflight required Monroe to "stipulate" that no other fuel provider would operate on the premises during the lease term because did not want the land it was agreeing to relinquish from its possession to go to any competitors.[37] Pilots for Patients only needed a small tract of land for its operations, but a larger parcel was leased to prevent a prime parcel from being commercially developed or used by an Avflight competitor to sell fuel.[38] Moreover, Monroe agreed to land restrictions and granted a right of first refusal in favor of Avflight for the land it relinquished.[39] At this time, Avflight held the majority of the land at MLU, including a significant amount of undeveloped land that, to date, has not improved.[40] Avflight even dismantled a fuel farm at the Lumen Hangars so that no other competitor could use it.[41] Monroe knew that the fuel farm was a viable asset for a fuel-selling FBO, but allowed Avflight to dismantle it without notice or opportunity for DaveAir to acquire it.[42]

In 2022, Monroe adopted new minimum standards (the "2022 Minimum Standards"), which required, among other things, that FBOs have a fueling permit and lease a minimum of 65,000 square feet at MLU, which includes a minimum of 1,000 square feet for office, restrooms, and public use areas; 7,500 square feet of hangar space; 40,000 square feet of ramp space sufficient to tie down 20 aircraft; and parking lot space for 20 vehicles.[43] Additionally, the 2022 Minimum Standards

---

[37] *See* R. Doc. 38, ¶ 88.
[38] *See* R. Doc. 38, ¶ 123.
[39] *See* R. Doc. 38, ¶ 124.
[40] *See* R. Doc. 38, ¶ 125.
[41] *See* R. Doc. 38, ¶ 93.
[42] *See* R. Doc. 38, ¶ 93.
[43] *See* R. Doc. 38, ¶ 95.

reduced the minimum fuel storage requirements to 20,000 gallons of Jet A fuel and 5,000 gallons for aviation gasoline.[44]

As soon as the 2022 Minimum Standards were adopted, DaveAir applied again to lease land at MLU to become a fuel-selling FBO, telling Monroe that it would be willing to accept a 0.6-acre tract or a parcel near the fire station.[45] DaveAir's proposal included a plan to improve the 0.6-acre tract, and McGee offered to pay rent in advance to alleviate concerns regarding the previous default.[46] Monroe told DaveAir that there was "increased interest" in commercial activities, and instead of leasing out the parcels individually, Monroe decided to combine the two, even though Monroe knew that DaveAir had been seeking this land for over two years, and the combined parcel would be subject to the public bid process.[47] DaveAir describes how it believes Monroe "was looking for a way to exclude DaveAir from becoming an FBO," leaving DaveAir "no choice but to file another Part 13 Complaint with the FAA."[48]

In September 2023, Monroe received approval to lease the 0.6-acre tract to DaveAir but failed to provide a draft lease for DaveAir and the FAA until October 6, 2023.[49] Even then, the terms of the lease differed significantly from those in Avflight's lease, to which the FAA pushed Monroe to "maintain a level FBO playing field."[50]

---

[44] *See* R. Doc. 38, ¶ 95.
[45] *See* R. Doc. 38, ¶ 96.
[46] *See* R. Doc. 38, ¶ 96.
[47] *See* R. Doc. 38, ¶ 97.
[48] *See* R. Doc. 38, ¶¶ 100–120.
[49] *See* R. Doc. 38, ¶¶ 107–108.
[50] *See* R. Doc. 38, ¶¶ 108–109.

In May 2024, Monroe and Avflight finalized their land-swap arrangement.[51] The effect of the land-swap transaction was that Avflight reduced its footprint at MLU by 0.43 acres, thereby paying less rent, while increasing its ability to restrict competition.[52] According to DaveAir, the FAA stated that "the airport owns the land and Avflight controls the aeronautical uses …. Even though Avflight reduced their footprint, the result was more control over limiting competition on the airport ramp th[a]n they had before."[53] Further, the FAA stated that the 2024 Avflight Lease Amendment "clearly is intended to restrict competition on airport-owned land and by its very execution appears to be gratuitous and favorable to Avflight."[54] The FAA also stated that Monroe "willingly and with forethought entered into an agreement that limited competition on the public ramp thus creating unreasonable and unjustly discriminatory scenario for any new entrants desiring to become a fuel selling FBO."[55]

To date, DaveAir is still being prevented from operating a fuel farm at MLU while Avflight remains the sole aircraft fuel vendor.[56] Avflight's prices for aircraft fuel—which are set by Avfuel—at MLU are higher than at comparable airports.[57] According to DaveAir, Avfuel acted on behalf of, and in concert with, Avflight to maintain Avflight's monopoly at MLU because Avflight's monopoly allows Avfuel to sell aviation fuel at MLU at inflated prices.[58] DaveAir alleges that Defendants have

---

[51] *See* R. Doc. 38, ¶ 129.
[52] *See* R. Doc. 38, ¶ 131.
[53] *See* R. Doc. 38, ¶ 131.
[54] *See* R. Doc. 38, ¶ 132.
[55] *See* R. Doc. 38, ¶ 132.
[56] *See* R. Doc. 38, ¶ 134.
[57] *See* R. Doc. 38, ¶¶ 137–138.
[58] *See* R. Doc. 38, ¶ 139.

engaged in the anticompetitive conduct with the specific intent to restrict competition and harm DaveAir and other potential competitors.[59]

DaveAir filed its Complaint against the Original Defendants on September 30, 2024.[60] After the Original Defendants filed motions to dismiss, DaveAir filed its Amended Complaint against Defendants on July 14, 2025.[61] Mayor Ellis was not named as a defendant in the Amended Complaint, however, Avfuel was added as a defendant.[62]

In its Amended Complaint, DaveAir alleges Defendants violated of Section 2 of the Sherman Act, Louisiana antitrust laws, and the Louisiana Unfair Trade Practices Act ("LUTPA").[63] DaveAir further alleges that Monroe violated Section 1 of the Sherman Act and the Equal Protection Clause of the U.S. Constitution.[64]

DaveAir seeks a combination of damages, injunctive and declaratory relief against Defendants for their alleged violations of the Sherman Act and Louisiana antitrust laws.[65] In addition, DaveAir seeks damages, injunctive and declaratory relief against Monroe for its alleged violations of the Equal Protection Clause.[66] DaveAir also seeks damages from Defendants for their alleged violations of LUTPA.[67]

---

[59] *See* R. Doc. 38, ¶ 144.
[60] *See* R. Doc. 1.
[61] *See* R. Doc. 38.
[62] *See* R. Doc. 38.
[63] *See* R. Doc. 38.
[64] *See* R. Doc. 38.
[65] *See* R. Doc. 38.
[66] *See* R. Doc. 38.
[67] *See* R. Doc. 38.

## II.    **LEGAL STANDARDS**

### A. **12(b)(1) Motion to Dismiss**

Article III of the Constitution limits federal court jurisdiction to "cases" or "controversies." This ensures "that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society.'"[68] "One element of the case-or-controversy requirement is that [a plaintiff], based on [its] complaint, must be able to establish that [it has] standing to sue."[69] "Although the case-or-controversy requirement of Article III, § 2 of the Constitution 'underpins both our standing and our mootness jurisprudence,' standing and mootness inquiries diverge in several important respects, one of which is timing."[70]

Article III standing requires a plaintiff to plead and prove "an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"[71] A defendant may challenge jurisdiction, including standing, in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).[72] When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proof.[73] A court should grant a Rule 12(b)(1) dismissal motion "only if it appears certain that the plaintiff cannot prove any set of facts in

---

[68] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

[69] *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[70] *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)).

[71] *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

[72] *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).

[73] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

support of his claim that would entitle plaintiff to relief."[74] A district court may grant a Rule 12(b)(1) motion for lack of subject matter jurisdiction "on any one of the three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[75]

### B. 12(b)(6) Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[76] "This requirement provides opposing parties 'fair notice of what the claim is and the grounds upon which it rests.'"[77] In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[78] A court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[79] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face."[80] As the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a

---

[74] *Id.* at 161.

[75] *Pickett v. Tex. Tech Univ. Health Sciences Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[76] FED. R. CIV. P. 8(a)(2).

[77] *Bell Atl. Corp v. Twombly*, 550 U, S. 544, 555 (2007) (citation omitted).

[78] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007) (internal quotation marks omitted).

[79] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[80] *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 569).

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.[81]

This plausibility standard calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim; however, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice.[82] "A court should not dismiss a complaint with properly pled factual allegations, even if it strikes [the court] that actual proof of those alleged facts is improbable."[83] However, "factual allegations must be enough to raise a right to relief above the speculative level."[84] Ultimately, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted."[85]

## III.   LAW AND ANALYSIS

### A. DaveAir's Complaint and Defendants' First Motions to Dismiss

The Complaint, and Original Defendants' motions to dismiss are functionally moot. The Original Defendants filed their first motions to dismiss seeking dismissal of DaveAir's claims pled in the *initial* complaint.[86] DaveAir thereafter amended its Complaint, removing Ellis as a defendant but adding Avfuel.[87] DaveAir's Amended Complaint does not incorporate the original Complaint.[88] Monroe and Private

---

[81] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).
[82] *Id.* (citation omitted).
[83] *Bazinet v. Beth Israel Lahey Healthy, Inc.*, 113 F.4th 9, 15 (5th Cir. 2024) (quoting *Twombly*, 550 U.S. at 556) (cleaned up).
[84] *Twombly*, 550 U.S. at 555.
[85] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir.2005).
[86] *See* R. Docs. 20, 24
[87] *See* R. Doc. 38.
[88] *See* R. Doc. 38; *see also* R. Doc. 59 at 3 n. 1.

Defendants then filed renewed motions to dismiss, wherein Defendants incorporated their first motions to dismiss, briefs in support, and reply briefs.[89]

"[A]n amended complaint, which supersedes the original complaint as the operative live pleading, [generally] renders moot a motion to dismiss the original complaint."[90] Because the Amended Complaint did not incorporate the Complaint, Defendants' first motions to dismiss are moot. However, since Defendants incorporated the arguments from their original motions to dismiss into their new motions to dismiss, DaveAir incorporated its prior opposition brief into its new one, and DaveAir stated that the same arguments that apply to Avflight apply equally to Avfuel, the Court will consider the arguments made by the parties in the original motions to dismiss when considering the new motions to dismiss.

### B. Subject Matter Jurisdiction

Next, Monroe claims that DaveAir's Sherman Act claims against them are moot.[91] Although Monroe continuously argues that DaveAir's claims are moot, the Court believes that Monroe intends to argue that DaveAir does not have standing to bring its Sherman Act claims because the FAA report attached to Monroe's motion to dismiss states that Monroe "provided several land parcels for lease opportunities to DaveAir" that would satisfy the minimum requirements.[92] The report that Monroe

---

[89] *See* R. Doc. 54 at 3–4; *see also* R. Doc. 52-1 at 3.
[90] *See Garcia v. City of Amarillo, Texas*, 2:18-CV-D-BR, 2018 WL 6272461, at *1 (N.D. Tex. Nov. 30, 2018), *report and recommendation adopted*, 2:18-CV-095-D, 2018 WL 6268222 (N.D. Tex. Nov. 30, 2018).
[91] *See* R. Doc. 27 at 8.
[92] *See* R. Doc. 27 at 8.

quotes is dated August 18, 2024, i.e., before DaveAir filed suit in this court.[93] Since the report is from before suit was filed, this is a standing issue generally, not a mootness issue.[94]

A motion to dismiss for lack of standing "may either be 'facial' or 'factual.'"[95] In analyzing a facial attack on standing, the court assesses whether the plaintiff has sufficiently alleged standing in the complaint and accepts as true the complaint's well-pleaded, non-conclusory factual allegations.[96] In a factual attack, the defendant "submits affidavits, testimony, or other evidentiary materials" to challenge the truth of the jurisdictional allegations.[97] "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof."[98] However, a court may not resolve disputed facts on a 12(b)(1) motion "where issues of fact are central both to subject matter jurisdiction and the claim on the merits."[99]

---

[93] *See* R. Doc. 27-1 at 1; *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 570 n.5 (1992) (noting that "standing is to be determined as of the commencement of suit").

[94] *United States Parole Commission v. Geraghty*, 445 U.S. 388, 404 (1980) ("The requisite personal interest must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.").

[95] *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

[96] *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[97] *Superior MRI Servs.*, 778 F.3d at 504.

[98] *Id.* (quotations omitted).

[99] *Daily Wire, LLC v. U.S. Dept. of State*, 733 F. Supp. 3d 566, 581 (E.D. Tex. 2024) (quoting *Pickett*, 37 F.4th at 1030)); *see also Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004) ("[R]esolution of the jurisdictional issue on a 12(b)(1) motion is improper" where the jurisdictional attack "is intertwined with the merits of a claim.")

Here, Monroe challenges DaveAir's standing factually by submitting evidence that it offered DaveAir leases.[100] However, the dispute at issue—whether Monroe interfered with DaveAir's ability to operate as a fuel selling FBO at MLU—is the merits question. The Court thus finds that Monroe's jurisdictional attack under Rule 12(b)(1) is intertwined with the merits of DaveAir's antitrust claims. At this stage, the Court determines only whether DaveAir stated a claim "by accepting [DaveAir's] well-pleaded allegations as true and considering them in the light most favorable to [DaveAir]."[101] Monroe can reassert its factual attack at summary judgment or trial.[102]

### C. Antitrust Claims

Section 1 of the Sherman Act makes unlawful "every contract, combination … or conspiracy, in restraint of trade or commerce among the several States."[103] Section 2 makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."[104] Louisiana's antitrust laws "are virtually identical to Sections 1 and 2 of the Sherman Antitrust Act, … and federal analysis of the Sherman Antitrust Act is persuasive, though not controlling."[105]

---

[100] *Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018).

[101] *Pickett*, F.4th at 1031.

[102] *See id*. at 1029 ("If … a decision on the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await determination of the merits either by the district court or by the fact finder at trial."); *see also Texas v. Mayorkas*, 2023 WL 5616184, at *2 (S.D. Tex. 2023) (denying motion to dismiss for lack of standing where the issue "is better resolved at the summary judgment stage where the Court can consider extra-record discovery evidence for standing").

[103] 15 U.S.C. § 1.

[104] *Id*. at § 2.

[105] *Lambert v. Bd. of Com'rs of Orleans Levee Dist.*, No. CIV A 05-5931, 2009 WL 152668, at *5 (E.D. La. Jan. 22, 2009); *HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*, 194 So.3d 784, 792–93 (La. App. 1 Cir. 5/26/16).

### 1. Statute of Limitations and Prescription

Monroe asserts that DaveAir's Sherman Act and Louisiana antitrust claims are time barred by the applicable statute of limitations and prescriptive period.[106] DaveAir contends that its claims are not time barred because the continuing violation exception applies.[107]

### a. Sherman Act Claims

The statute of limitations for Sherman Act claims is four years.[108] "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business."[109] "[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date…."[110] Under the continuing violation exception, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and … the statute of limitations runs from the commission of the act."[111] To toll the statute of limitations, the plaintiff must show "some act of the defendants during the limitations period [that injured plaintiff's business]."[112]

---

[106] *See* R. Doc. 27 at 15.

[107] *See* R. Doc. 29 at 25.

[108] 15 U.S.C. § 15b.

[109] *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 338 (1971).

[110] *Id.* at 339.

[111] *Id.* at 338.

[112] *Rx.com, Inc. v. Medco Health Sols., Inc.*, No. 5:04-CV-227, 2008 WL 11449354, at *6 (E.D. Tex. Mar. 11, 2008), *aff'd sub nom. Rx.com v. Medco Health Sols., Inc.*, 322 Fed. Appx. 394 (5th Cir. 2009) (quoting *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128–29 (5th Cir. 1975) (Where plaintiff complained that defendant excluded it from participation in the standard accessory industry, the Fifth Circuit held that plaintiff failed to demonstrate that it had been refused access to standard accessories within the limitation period, and remanded to the district court to determine "whether there was … a mere absence of dealing or whether there was some specific act or word precluding [plaintiff] from obtaining supplies.").

"While a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such a motion should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[113] Accordingly, dismissal at the 12(b)(6) stage is proper only "where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling."[114]

The Court finds that DaveAir's Amended Complaint sufficiently pleads a basis for tolling the four-year statute of limitations applicable to Sherman Act claims. Assuming the well-pleaded facts as true, the Amended Complaint provides numerous acts by Defendants during the limitations period that injured DaveAir's business including Monroe allowing Avflight to fuel planes without a valid fuel permit;[115] Monroe prohibiting DaveAir from bidding on new contracts;[116] after the FAA ordered Monroe to amend the minimum standards for FBOs, Monroe failed to approve new minimum standards for nearly two years;[117] Avflight dismantling a fuel farm to prevent potential competitors from using it;[118] and Private Defendants continuing to raise prices for aircraft fuel.[119] Accordingly, DaveAir's Sherman Act claims are not time barred, and Monroe's motion to dismiss DaveAir's claims on this basis is denied.

---

[113] *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis*, 706 F.2d 638, 640 (5th Cir. 1983) (quoting *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977)).

[114] *Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 351 (5th Cir. 2011) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[115] *See* R. Doc. 38, ¶ 69.

[116] *See* R. Doc. 38, ¶ 71.

[117] *See* R. Doc. 38, ¶¶ 56–58.

[118] *See* R. Doc. 38, ¶ 93.

[119] *See.* R. Doc. 38, ¶ 137–140.

### b. Louisiana Antitrust Act Claims

"There is no statute of limitation in … the Louisiana Antitrust Act."[120] Nevertheless, the Louisiana Supreme Court has held that because an antitrust action sounds in tort, a one-year prescriptive period applies.[121] However, "[p]rescription does not begin to run until the continuing tort ceases."[122] "Prescriptive statutes are strictly construed against prescription and in favor of the claim."[123] For the same reasons described *supra*, DaveAir's Louisiana antitrust claims are not time barred.

### 2. Sherman Act Claims Against Monroe

### a. State-Action Immunity Doctrine

"Supreme Court precedent recognizes three tiers of protection from federal antitrust lawsuits under the state-action immunity doctrine: (1) clear exercises of a state's sovereign power are immune from federal antitrust scrutiny *ipso facto* ('*Parker*[124] immunity'); (2) acts of a 'prototypical state agenc[y]' or municipality are entitled to immunity if pursuant to a 'clearly articulated and affirmatively expressed' state policy to replace competition with regulation ('*Hallie*[125] scrutiny'); and (3) actions by private parties or state agencies controlled by participants in the market they regulate are protected if they meet the aforementioned 'clear articulation'

---

[120] *CamSoft Data Sys., Inc. v. S. Electrs. Supply, Inc.*, 2019 WL 2865138, at *30 (La. App. 1 Cir. 7/2/19).
[121] *Loew's, Inc. v. Don George, Inc.*, 110 So.2d 553 (La. 1959).
[122] *State ex rel. Ieyoub v. Bordens, Inc.*, 684 So.2d 1024, 1027 (La. App. 4 Cir. 11/27/96).
[123] *See Bustamento v. Tucker,* 607 So.2d 532 (La.1992).
[124] *See Parker v. Brown*, 317 U.S. 341 (1943).
[125] *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985).

requirement and are also subject to 'active supervision' by the state ('*Midcal*[126] scrutiny')."[127]

Monroe asserts that it is immune from DaveAir's antitrust claims under *Parker* immunity.[128] *Ipso facto Parker* immunity applies only for "[s]tate legislation and decisions of a state supreme court, acting legislatively rather than judicially."[129] For a municipality to avail itself of *Parker* immunity, the conduct of a municipality— like Monroe—must survive *Hallie* scrutiny, in other words, its conduct must be taken pursuant to a clearly articulated and affirmatively expressed state policy to displace competition.[130] Although the state policy need not "explicitly permit displacement of competition,"[131] it must "demonstrate that the state legislature clearly contemplated anticompetitive conduct,"[132] such that "the suppression of competition[] is the 'foreseeable result' of what the state authorized."[133]

Monroe contends that its allegedly anticompetitive conduct has been authorized by Louisiana Revised Statute § 2:135.1(E)(1), which states:

> It having been determined that the financial stability of the state's air carrier airports is dependent upon the ability to enter into long-term lease agreements with air carriers and fixed-base operators in order to assure the resources necessary for the financing of improvements for, and the maintenance of, such airports and that the nature of the lease arrangements customarily entered into with such air carriers and fixed-base operators at air carrier airports makes it unnecessary and

---

[126] *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980).
[127] *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 346 (5th Cir. 2021) (internal citations omitted) (cleaned up).
[128] *See* R. Doc. 27 at 8–9.
[129] *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 504 (2015) (internal quotation marks omitted).
[130] *Hallie*, 471 U.S. at 45–46.
[131] *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 373 (1991).
[132] *Martin v. Mem. Hosp.*, 86 F.3d 1391, 1398 (5th Cir. 1996).
[133] *Omni Outdoor Advertising*, 499 U.S. at 372–73.

undesirable that such lease agreements be subject to advertisement and competitive bidding because leased premises or improvements normally are constructed to the individual specifications of the air carriers and fixed-base operators with the lease payments being designed to cover the cost of such premises or improvements, and it having been determined that public convenience and necessity so requires, it hereby is provided that, notwithstanding any other provision of law to the contrary, leases of airport operational space, facilities, equipment, and other airport land and improvements at airports may be entered into with air carriers and fixed-base operators for initial terms of up to thirty years, and optional extension terms of up to an additional twenty-five years, without advertising or competitive bidding.

According to Monroe, the Louisiana legislature expressly adopted an anti-competitive policy with regard to leases granted to FBOs through § 2:135.1(E)(1).[134] Monroe states that the clear "purpose of this statute is to impede competitive bidding to maintain financial stability at airports," and that "the alleged 'deprivation of competition' by Defendants is simply the foreseeable (i.e. inherent, logical, or ordinary) result of Monroe's aim to preserve financial stability" through the terms of § 2:135.1(E)(1).[135]

DaveAir argues that § 2:135.1(E)(1) does not articulate, express, or adopt an anticompetitive policy; instead, it "simply allows an airport authority to circumvent the public bid process otherwise required by Section 2:135.1(A)(3) and the term limit of Section 2:135.1(B)(2)."[136] Further, DaveAir argues that not only does § 2:135.1(E)(1) not articulate an anticompetitive policy, but Louisiana law expresses a policy in favor of competition at airports.[137] To support this argument, DaveAir cites to a number of statutes, including § 2:135.1(M)(1), which states:

---

[134] See R. Doc. 27 at 9.
[135] See R. Doc. 27 at 9–10.
[136] See R. Doc. 29 at 12.
[137] See R. Doc. 29 at 12.

> The lease shall preclude the lessee fixed-base operator from requiring the users of other leased areas to secure goods and services exclusively from such fixed-base operator. In no case shall a fixed-based operator be leased more apron space than that for which an immediate demonstrated need has been shown. Sponsors shall ensure that apron space not necessary to current operations shall be available upon request to future tenants. Therefore, where there is only one fixed-base operator on an airport and there is more apron space than required for the operation of such operator, only that space actually required for such operation shall be leased to the existing fixed-based operator.

DaveAir contends that Monroe's "alleged obstruction of DaveAir's attempts to enter the fuel market—by conspiring to deny workable leases, impose baseless delays, and cede control to a sole incumbent fuel provider" violates the plain language of Louisiana's Uniform Airport Law[138] and the FAA's binding federal Grant Assurances.[139]

The Court disagrees that if § 2:135.1(E)(1) "clearly articulates and affirmatively expresses a state policy in favor of displacing competition." Through the language of § 2:135.1(M)(1), Louisiana not only encourages competition, but *requires* it.[140] Thus, Monroe is not immune from DaveAir's Sherman Act claims under the state-action doctrine. Accordingly, Monroe's motion to dismiss on immunity grounds is denied.

### b.  Louisiana Antitrust Claims Against Monroe

Municipalities do not have a *per se* exemption from Louisiana's antitrust provisions.[141] Adopting the "state action rule" used by federal courts in defining the

---

[138] LA. REV. STAT. § 2:131 *et seq.*
[139] *See* R. Doc. 29 at 14.
[140] *See* LA. REV. STAT. § 2:131.
[141] *Reppond v. City of Denham Springs*, 572 So.2d 224, 227–29 (La. App. 1 Cir. 1990).

applicability of the Sherman Act, the Louisiana First Circuit Court of Appeal held that "immunity from the state anti-monopoly statutes will only extend to local government activities performed pursuant to a state policy to displace competition with regulation or monopolistic service."[142] Based on this, this Court in *Giddens v. City of Shreveport* held that if there is no state policy to displace competition, a defendant is not exempt from the application of Louisiana's antitrust laws.[143] Accordingly, since Monroe is not immune from DaveAir's Sherman Act claims, it is likewise not immune from DaveAir's Louisiana antitrust claims.

### 3. Antitrust Claims Against Private Defendants

Private Defendants assert that they are immune from liability stemming from DaveAir's antitrust claims under an extension of the state-action doctrine and the *Noerr-Pennington* doctrine.

### a. Sherman Act Claims

### i. State-Action Immunity Doctrine

Since the Court has found that there is no clearly articulated and affirmatively expressed state policy in favor of displacing competition, Private Defendants cannot enjoy immunity under the state-action doctrine. Accordingly, Private Defendants' motion to dismiss DaveAir's Sherman Act claims on state-action immunity grounds is denied.

---

[142] *Reppond*, 572 So.2d at 229.
[143] *Giddens*, 901 F.Supp. 1170, 1179 (W.D. La. 1995).

### ii. *Noerr-Pennington* Immunity Doctrine

The *Noerr-Pennington* doctrine is derived from two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,[144] and *United Mine Workers of America v. Pennington*.[145] "The essence of the doctrine is that the parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent."[146]

*Noerr-Pennington* instructs that the Sherman Act does not reach political activities, no matter how nefarious those activities may be.[147] The doctrine confers immunity to private individuals seeking anticompetitive action from the government.[148] *Noerr-Pennington* immunity applies to any concerted effort to sway public officials regardless of the private citizen's intent.[149]

Private Defendants contend that their conduct "merely amounts to petitioning Monroe" and that the complaint alleges that they "simply communicated with Monroe in reference to its leases and its opinions on the safety operations of FBOs."[150] Further, Private Defendants state that "DaveAir attempts a clever sleight-of-hand by rebranding what is normally considered 'petitioning' as 'systematically pressuring' a government."[151] Regardless, they argue that even taking DaveAir's allegations as

---

[144] 365 U.S. 127 (1961).
[145] 381 U.S. 657 (1965).
[146] *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).
[147] *Astoria Entertainment, Inc. v. Edwards*, 159 F.Supp.2d 303, 320 (E.D. La. 2001).
[148] *See Noerr*, 365 U.S. 127; *see also Pennington*, 381 U.S. 657; *see also Omni Outdoor Advertising*, 499 U.S. 365 (granting *Noerr-Pennington* immunity for efforts to influence local governments).
[149] *See Pennington*, 381 U.S. at 670.
[150] *See* R. Doc. 24-1 at 17.
[151] *See* R. Doc. 32 at 6.

true, they "did nothing more than petition Monroe, comply with Monroe's directives, and advocate for themselves via the governmental process – activity protected by the First Amendment of the Constitution."[152]

Private Defendants analogize DaveAir's allegations to those in *Koerner v. Garden District Association*.[153] In *Koerner*, the plaintiff claimed that the defendants encouraged and exerted political pressure on the City, the Director of Safety and Permits, and/or New Orleans' Fourth Municipal District Assessor to violate the plaintiff's civil rights.[154] The plaintiff alleged that the defendants encouraged the City to issue the plaintiff a citation, file a contempt motion in the Civil District Court, and encouraged the District Assessor to revoke his homestead exemption.[155] The court found that "[t]he fact that the [defendants] encouraged the City, [Director of Safety and Permits] and/or [New Orleans' Fourth Municipal District Assessor] to take action to enforce existing laws is specifically protected action under the First Amendment and the type of situation the *Noerr-Pennington* doctrine was designed to guard against."[156] Private Defendants assert that DaveAir's own allegations show that they did "nothing more than encourage Monroe and the MLU airport authority to adhere to existing law – the Minimum Standards."[157]

DaveAir argues that the alleged conduct "went well beyond lobbying for a particular interpretation of the Minimum Standards or stricter FBO rules."[158]

---

[152] *See* R. Doc. 59 at 3.
[153] *See* R. Doc. 24-1 at 16.
[154] *Koerner v. Garden Dist. Ass'n*, No. CIV. 00-2206, 2001 WL 1631337, at *2 (E.D. La. Dec. 18, 2001)
[155] *Id.*
[156] *Id.* at *5.
[157] *See* R. Doc. 24-1 at 16.
[158] *See* R. Doc. 29 at 18.

According to DaveAir, Private Defendants increased DaveAir's fuel price upon learning that DaveAir wanted to enter the market, surveilled DaveAir's fueling activities, demanded revocation of DaveAir's permit, urged other tenants to avoid doing business with DaveAir, and dismantled a fuel farm that might have aided a competitor.[159] DaveAir claims that *Koerner* does not apply because the conduct in this case went beyond "routine 'petitions'" for government action; they are private, exclusionary measures undertaken to suppress competition.[160]

DaveAir further argues that even if Private Defendants' actions qualify for *Noerr-Pennington* protection, they fall within the "sham" exception.[161] The "sham" exception applies only in cases where individuals use "the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon."[162] This exception "involves attempts to influence public officials for the sole purpose of expense or delay."[163] "The evidence must show that a defendant's lobbying activities were 'objectively baseless' for the 'sham' exception to apply."[164] According to DaveAir, the complaint alleges a "classic example of the sham exception—[Private Defendants] frivolously objected to and interfered with DaveAir's attempts to secure FBO status, thereby imposing expense and delay on DaveAir."[165]

Private Defendants argue that the sham exception does not apply because the alleged antitrust injury stemmed from the outcome of Monroe's decisions to grant or

---

[159] *See* R. Doc. 29 at 18.
[160] *See* R. Doc. 29 at 18.
[161] *See* R. Doc. 29 at 19.
[162] *Omni Outdoor Advertising*, 499 U.S. at 380.
[163] *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 861 (5th Cir. 2000).
[164] *Id*. at 861–62.
[165] *See* R. Doc. 29 at 19.

not to grant particular leases, and to adopt or not to adopt certain standards for FBOs.[166] Private Defendants claim that they never interfered with Monroe's licensure or leasing processes.[167] Instead, Private Defendants claim they only petitioned Monroe for favorable outcomes to those processes.[168] Further, Private Defendants contend that their petitioning of Monroe to revoke DaveAir's fueling permit cannot be considered baseless or frivolous because DaveAir admitted in its Complaint that it violated the terms of its own permit.[169]

To a certain extent, both parties are correct. DaveAir is correct in its assertion that Private Defendants' conduct went beyond just petitioning Monroe. Private Defendants are also correct in their assertions that their petitioning Monroe does not fall within the sham exception. The Supreme Court has stated that "a successful 'effort to influence governmental action certainly cannot be characterized as a sham.'"[170] Further, the sham exception does not apply when a defendant "'genuinely seeks to achieve his governmental result, but does so *through improper means*.'"[171] As such, the Court finds that Private Defendants' communications with Monroe regarding the licensure and leasing processes, adopting certain standards for FBOs, as well as Private Defendants' communications with Monroe regarding the revocation of DaveAir's fueling permit do not violate the antitrust laws, even if they were

---

[166] *See* R. Doc. 24-1 at 17–18.
[167] *See* R. Doc. 32 at 8.
[168] *See* R. Doc. 32 at 8.
[169] *See* R. Doc. 32 at 8.
[170] *Prof. Real Est. Inv'rs v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 58–59 (1993) (alteration omitted) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502 (1988)).
[171] *Omni Outdoor Advertising*, 499 U.S. at 380 (emphasis in original) (quoting *Allied Tube*, 486 U.S. at 507 n.10).

intended to, and did, eliminate or reduce competition.[172] Because Private Defendants actions were "a successful effort to influence governmental action," they "cannot be characterized as a sham."[173] Accordingly, based on the face of the Amended Complaint, the *Noerr-Pennington* doctrine bars DaveAir's Sherman claims against Private Defendants for their successful petitioning of Monroe.

This finding, however, is limited to Private Defendants' petitions to Monroe regarding the licensure and leasing processes, adopting certain standards for FBOs, and Private Defendants' communications with Monroe regarding the revocation of DaveAir's fueling permit. The *Noerr-Pennington* doctrine does not provide Private Defendants' immunity from liability for *their* alleged actions, including but not limited to dismantling the fuel farm, increasing DaveAir's fuel price upon learning that DaveAir wanted to enter the market, and urging other tenants to avoid doing business with DaveAir.

### b. Louisiana Antitrust Claims

### i. State-Action Immunity Doctrine

Since the Court has found that there is no clearly articulated and affirmatively expressed state policy in favor of displacing competition, Private Defendants cannot enjoy immunity under the state-action doctrine. Accordingly, Private Defendants'

---

[172] *See Acoustic Systems, Inc. v. Wenger Corp.*, 207 F.3d 287, 294 (5th Cir. 2000) ("[A]s a general rule, lobbying and other efforts to obtain legislative or executive action do not violate the antitrust laws, even when those efforts are intended to eliminate competition or otherwise restrain trade.").

[173] *Columbia Pictures*, 508 U.S. at 58–59 (quotation omitted); *see e.g.*, *Bayou Fleet*, 234 F.3d at 862 ("Because the Clulees achieved favorable results, their endeavors were, by definition, reasonable."); *Lamar Cty. Elec. Co-op. Ass'n v. Rayburn Cty. Elec. Co-op., Inc.*, 330 F.Supp.2d 763, 766 (E.D. La. 2002) ("Rayburn's lawsuit was successful, and therefore it cannot be characterized as a sham.").

motion to dismiss DaveAir's Louisiana antitrust claims on state-action immunity grounds is denied.

### ii. *Noerr-Pennington* Immunity Doctrine

Louisiana state courts have recognized that "[t]he *Noerr-Pennington* doctrine sweeps broadly and is implicated by both state and federal antitrust claims that allege anticompetitive activity in the form of lobbying or advocacy before any branch of either federal or state government."[174] Accordingly, since the Court has found that the *Noerr-Pennington* doctrine bars DaveAir's Sherman Act claims against Private Defendants for their successful petitioning of Monroe, the doctrine likewise bars DaveAir's Louisiana antitrust claims against Private Defendants for the same conduct.

### D. LUTPA

DaveAir claims that Defendants' conduct is a violation of LUTPA, set forth at La. Rev. Stat. § 51:1401 *et seq*. LUTPA forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[175] The thrust of LUTPA is to deter injury to competition.[176] There is not a specific list or definition of the conduct that constitutes unfair or deceptive trade practices, rather, the acts "are determined on a case-by-case basis."[177]

---

[174] *Capitol House Pres. Co., L.L.C. v. Perryman Consultants, Inc.*, 47 So.3d 408, 418 (La. App. 1 Cir. 8/28/09); *see also Astoria v. DeBartolo*, 12 So.3d 956, 961–66 (La. 5/22/09).

[175] La. Rev. Stat § 51:1405(A).

[176] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir. 1994), *cert. denied*, 513 U.S. 815, (1994).

[177] *Volentine v. Raeford Farms of Louisiana, LLC*, 50-698 (La. App. 2 Cir. 8/15/16), 201 So.3d 325, 353, *writ denied*, 2016-1924 (La. 12/16/16), 212 So.3d 1171, and *writ denied*, 2016-1925 (La. 12/16/16), 212 So.3d 1171.

### 1. Claims Against All Defendants

Private Defendants—and Monroe through incorporating Private Defendants' arguments to the extent they apply—contend that DaveAir's LUTPA claims are facially deficient.[178]

In establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[179] "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA."[180] LUTPA "does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious."[181] "[T]he range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, deception, and similar conduct, and not mere negligence.[182] To sustain a cause of action under LUTPA, the Louisiana Supreme Court has promulgated a two-part test: (1) the person must suffer an ascertainable loss; and (2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices.[183]

---

[178] *See* R. Doc. 24-1 at 25; R. Doc. 54-1 at 2–3.
[179] *Quality Envtl. Processes, Inc. v. I.P. Petro. Co.*, 2013-1582 (La. 5/07/14), 144 So.3d 1011, 1025 (quoting *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09–1633 (La.4/23/10), 35 So.3d 1053, 1059)).
[180] *Cheramie Services*, 35 So.3d at 1060.
[181] *Id.* (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).
[182] *Id.*
[183] *River Rental Tools, Inc. v. Smith Power Sols., LLC*, 342 So.3d 1052, 1057 (La. App. 4 Cir. 6/15/22) (citing *Cheramie Services*, 35 So.3d at 1059).

DaveAir contends that it has sufficiently alleged LUTPA violations because it argues that LUTPA encompasses conduct that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious."[184] However, Defendants argue that DaveAir has failed to allege facts that bring their conduct into the realm of LUTPA violations because LUTPA prohibits fraud, misrepresentation, deception, and similar conduct.[185]

The Court finds that DaveAir has not sufficiently plead LUTPA violations against Defendants. Although DaveAir claims that Defendants engaged in "anticompetitive, deceptive, and oppressive practices," DaveAir fails to sufficiently plead how Defendants' conduct is "deceptive."[186] "A trade practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation."[187] Here, the Amended Complaint alleges 10 specific instances of "unfair or deceptive acts or practices," including: (1) Defendants conspired to block DaveAir from selling fuel at MLU; (2) Defendants interfered with DaveAir's legitimate business opportunities; (3) Defendants confected a discriminatory and anticompetitive lease agreement, and conspired in enforcing its terms, despite knowing that it violated Monroe's Grant Assurances with the FAA; (4) Monroe refused to give DaveAir lease terms similar to Avflight's, even though Monroe acknowledged that certain provisions of Avflight's lease violated Monroe's Grant Assurances; (5) Avflight entered into exclusive fuel-seller agreements at MLU; (6) Avflight threatened to sue Monroe if DaveAir was

---

[184] *See* R. Doc. 29 at 23.
[185] *See* R. Doc. 24-1 at 26.
[186] *See* R. Doc. 38, ¶¶ 226–232.
[187] *Jefferson v. Chevron U.S.A. Inc.*, 713 So.2d 785, 793 (La. App. 4 Cir. 5/20/98).

allowed to sell fuel; (7) Avflight and Monroe conspired to allow Avflight to "bank" vacant land to prevent other FBOs from meeting the Minimum Standards; (8) Avflight dismantled the Lumen Hangars' fuel farm that DaveAir pursued; (9) Monroe allowed Avflight to secure fuel assets at the Lumen Hangars and removed the fuel equipment before making the Lumen Hangars available for lease; and (10) Defendants eliminated competition and drove up fuel prices.[188] These actions, which were not concealed from DaveAir, do not amount to fraud, deceit, or misrepresentation.[189] Accordingly, Defendants' motions to dismiss DaveAir's LUTPA claims are granted.

### 2. *Noerr-Pennington* Immunity for Private Defendants

Although the Court has determined that DaveAir has not sufficiently pled its LUTPA claims against Defendants', the Court finds that even if DaveAir did so, Private Defendants are entitled to immunity from liability under the *Noerr-Pennington* doctrine for their successful petitioning of Monroe.

The *Noerr-Pennington* doctrine serves as a defense for claims arising under LUTPA.[190] "Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, other circuits have expended it to protect first amendment petitioning of the government from claims brought under federal and state laws … There is simply no reason that common-law tort doctrine can any more permissibly abridge or chill the

---

[188] *See* R. Doc. 38, ¶¶ 227(a.–j.).
[189] *See* R. Doc. 38, ¶¶ 227(a.–j.).
[190] *721 Bourbon, Inc. v. Willie's Chicken Shack, LLC*, No. CIV. 19-9069, 2020 WL 587886, at *3 (E.D. La. Feb. 6, 2020); *see also Capitol H. Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, 47 So.3d 408, 418 (La. App. 1st Cir. 8/28/09), *writ denied*, 27 So. 3d 856 (La. 2010).

constitutional right of petition than can a statutory claim such as antitrust."[191] "[T]here is no reason that the constitutional protection of the right to petition should be less compelling in the context of claims that arise outside of the scope of antitrust laws."[192]

Private Defendants contend that "[i]t would chill [Private Defendant]'s constitutional right to petition Monroe if the *Noerr-Pennington* doctrine extended immunity to [Private Defendants] for [their] conduct under the Sherman Antitrust Act, but did not provide immunity for the *exact same conduct* under LUTPA."[193] The Court agrees. As previously discussed, immunity from liability under the *Noerr-Pennington* doctrine bars DaveAir's claims against the Private Defendants for their successful petitioning of Monroe.[194]

### E. Equal Protection

DaveAir claims that Monroe's "pattern of unequal treatment" aimed at preventing DaveAir from achieving FBO status violates the Equal Protection Clause of the Fourteenth Amendment.[195] The Equal Protection Clause "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."[196]

---

[191] *721 Bourbon*, 2020 WL 587886 at *3 (quoting *Video Int'l*, 858 F.2d at 1084).
[192] *Astoria*, 12 So.3d at 964.
[193] *See* R. Doc. 24-1 at 24.
[194] *See supra* Part III.D.2.b.
[195] *See* R. Doc. 38, ¶ 217.
[196] *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (cleaned up).

DaveAir does not allege that it is a member of a discrete group but asserts instead that Monroe singled it out as a "class of one" through selective enforcement, personal vindictiveness, and adverse zoning permit decisions.[197] Relevant here, the Supreme Court has "recognized [...] equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment."[198]

"To establish an equal protection claim [DaveAir] must first show that it was treated differently from another similarly situated business."[199] "Similarly situated means *in all relevant respects* alike."[200] Determining whether a comparator is similarly situated requires consideration of "'the full variety of factors that an objectively reasonable ... decisionmaker would have found relevant in making the challenged decision.'"[201]

DaveAir contends that it and Avflight are similarly situated because both are businesses seeking to sell aircraft fuel and related aeronautical services at the same airport and that DaveAir meets the qualifications to be a fuel-selling FBO.[202] DaveAir further argues that if it is missing any advantage that Avflight enjoys at MLU, that shortfall stems from Avflight's monopoly, aided by Monroe.[203]

---

[197] *See* R. Doc. 29 at 22–22.
[198] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).
[199] *Golden Glow Tanning Salón, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 977 (5th Cir. 2022).
[200] *Id.* at 978 (emphasis added).
[201] *Lindquist v. City of Pasadena, Tex.,* 669 F.3d 225, 234 (5th Cir. 2012) (citation omitted).
[202] *See* R. Doc. 29 at 22.
[203] *See* R. Doc. 29 at 22.

Monroe argues that DaveAir conclusively alleges that it is similarly situated to Avflight, and these conclusory allegations are insufficient to withstand the motion to dismiss.[204] Further, Monroe asserts that DaveAir cannot make allegations that it is similarly situated with Avflight because Avflight has been an FBO at MLU for nearly a decade, it has a history of successfully serving commercial and general aviation customers, and it possesses substantial holdings on the ground and along the airport ramp, while DaveAir on the other hand, is a new market entrant whose history at the airport includes defaulting on rent.[205] Further, Monroe argues that a municipality is granted discretion in choosing with whom it will do business.[206] Lastly, Monroe contends that DaveAir's proposed standard for the "similarly situated" element would render the element meaningless because "[a]nyone who sought the same job or opportunity would be 'similarly situated' simply by virtue of their personal desire."[207]

In *Boston Executive Helicopters, LLC v. Maguire*,[208] the U.S. District Court of Massachusetts faced an almost identical equal protection claim. The plaintiff alleged that it and its comparator "were commercial tenants at Norwood [Airport] seeking to do business as FBOs."[209] The court found that this allegation was "a conclusory allegation that it is similarly situated to" its comparator.[210] Further, the court found the two companies to not be similarly situated because the comparator controlled a

---

[204] *See* R. Doc. 27 at 11.
[205] *See* R. Doc. 27 at 11.
[206] *See* R. Doc. 27 at 11–12.
[207] *See* R. Doc. 33 at 5.
[208] 196 F. Supp. 3d 134.
[209] *Id*. at 144.
[210] *Id*.

substantial amount of ramp space and had years of experience as an FBO at the airport, while the plaintiff was "concededly a new market entrant."[211]

DaveAir made no attempt to distinguish this case, nor did it offer any other authority to support its argument that it is similarly situated to Avflight. Based on this, the Court chooses to follow the reasoning of the court in *BEH*, and thus, finds that DaveAir has not sufficiently pled that it is similarly situated to Avflight. Accordingly, Monroe's motion to dismiss DaveAir's equal protection claim is granted.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' Motions to Dismiss (R. Docs. 20, 24, 52, 54) are hereby **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED** that Monroe's motion is **GRANTED** insofar as equal protection claims by Plaintiff, DaveAir, asserted against Monroe are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' motions are **GRANTED** insofar as all LUTPA claims by DaveAir asserted against Monroe, Avflight, and Avfuel are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** insofar as DaveAir's Sherman Act and Louisiana antitrust claims asserted against Avflight and Avfuel are subject to immunity from liability under the *Noerr-Pennington* doctrine.

---

[211] *Id*. n. 9.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent that it seeks dismissal of DaveAir's Sherman Act and Louisiana antitrust claims against Monroe.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent it seeks dismissal of DaveAir's Sherman Act and Louisiana antitrust claims against Avflight and Avfuel that are not protected by the *Noerr-Pennington* doctrine. Specifically, Avflight and Avfuel's conduct, and not the conduct of Monroe.

**THUS DONE AND SIGNED** this 21st day of November, 2025.

_____

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**